UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 11-10195-RWZ

UNITED STATES OF AMERICA

v.

SANUSIE MO KABBA

MEMORANDUM OF DECISION

March 4, 2013

ZOBEL, D.J.

Defendant Sanusie Mo Kabba has been charged in a superseding indictment with two counts of conspiracy to distribute marijuana, oxycodone, and cocaine in violation of 21 U.S.C. § 846, and two counts of conspiracy to collect debt by extortionate means in violation of 18 U.S.C. § 894.  He now moves to suppress all evidence derived from the warrantless installation and use of a global positioning system ("GPS") tracking device on a vehicle used by him.  Defendant also seeks an order compelling the government to produce additional discovery regarding the installation and use of the GPS device, including any data collected during monitoring of the vehicle.  Based on the evidence adduced at a hearing, I find the following facts and deny defendant's motion due to a lack of standing.

**I. Findings of Fact**

At approximately 8:46 p.m. on August 20, 2010, federal agents from the

Department of Homeland Security, Immigration and Customs Enforcement ("ICE") conducting wiretap surveillance intercepted a phone call between Safwan Madarati ("Madarati"), the primary target of a drug trafficking investigation, and an individual later identified as defendant.[1] During the call, Madarati asked where defendant was and told him that he (Madarati) was "at the store." Defendant responded that he was "about ten minutes away." Madarati stated that he did not "wanna go back empty" and that he would wait for defendant outside. Defendant agreed that he would come meet Madarati. Around the same time, agents observed Madarati in his vehicle parked outside a Quick Stop convenience store managed by defendant in Roxbury, Massachusetts.

Beginning September 21, 2010, agents intercepted a series of telephone calls[2] in which Madarati asked defendant about "paperwork," a term agents believed referred to drug proceeds. Madarati also spoke to defendant about getting a "seven," which agents believed was a reference to cocaine. During a call at 9:02 a.m. on September 23, 2010, defendant told Madarati that he would bring "the paper works (sic)" to Madarati. Later that day at 12:21 p.m., Madarati called and asked if defendant had gotten "the seven" and whether it was in "one piece." At 2:23 p.m., Madarati and defendant arranged to meet at the "same spot" – the "food place" – in twelve to fifteen minutes.

---

[1] At the hearing, ICE Special Agent Michael Krol testified that agents subsequently discovered that the phone number called by Madarati was registered to Westa International Development and later traced to defendant.

[2] These calls were made by Madarati to a different phone number than that used to reach defendant in the August 20 call.

That same day, Massachusetts State Police Sergeant Dean LeVangie, who had been deputized as a federal officer and assigned to the Madarati investigation, was engaged in physical surveillance of Madarati. At approximately 2:30 p.m., Sergeant LeVangie observed Madarati leave his residence in a blue Dodge pickup truck and drive to Star Market at 40 Homer Avenue in Cambridge, Massachusetts. Madarati pulled into the parking lot and stopped in front of a black GMC Yukon sport utility vehicle registered to Westa International Development. Sergeant LeVangie observed a man, later identified as defendant, get out of the Yukon carrying a shoe box and get into the passenger side of Madarati's pickup, which then drove away.

After defendant and Madarati had left the parking lot in the truck, Sergeant LeVangie, upon instructions from the case office, attached a GPS tracking device to the undercarriage of the GMC Yukon near the rear bumper. No entry into or manipulation of the vehicle was necessary to install the battery-powered device, which was affixed using strong magnets. The installation took approximately one minute and was done without a warrant. ICE Special Agent Michael Krol testified at the hearing that the decision to attach the GPS tracker was made to learn more about the drug trafficking operation. Both Sergeant LeVangie and Agent Krol testified that at that time they believed – based on their own experience, training, and office guidance – that the law did not require a warrant prior to installing and using a GPS device.

About one hour later, Madarati's Dodge truck returned to the Star Market parking lot. Sergeant LeVangie observed defendant exit the passenger side of the pickup, this time not carrying the shoe box, and get back into the Yukon.

The following day, September 24, 2010, while monitoring data transmitted by the GPS device, agents noticed the GMC Yukon traveling out of state to Pennsylvania and coming back the same day, then heading to Rhode Island. Agent Krol testified that agents suspected the Yukon was involved in a pick-up or drop-off of drug proceeds, but were not able to have the vehicle pulled over. A day or two later, again according to GPS information, the Yukon traveled to Florida, where it remained for several days. Agents did not know who was driving the vehicle on either occasion.

Meanwhile, agents continued to intercept telephone calls between Madarati and defendant. On September 27 and 28, 2010, the two discussed "buttons," which agents believed to be a coded reference to pills of some sort, with defendant stating that he "went for the buttons" and Madarati asking "how much." On October 3, 2010, at 6:48 p.m., defendant told Madarati that he could give him "knobs" for seven or ten dollars, which Agent Krol testified was consistent with the wholesale price of pills. Defendant also mentioned needing to "talk about those buttons" and arranged to meet with Madarati the next day.

Around this time, also on October 3, 2010, agents learned from the GPS device that the GMC Yukon was traveling northbound on Interstate-95 into Rhode Island. Agent Krol called deputized Massachusetts State Police Trooper Orlando Tirella with the approximate location of the Yukon and asked him to request that Rhode Island State Police ("RISP") to stop the vehicle. Trooper Tirella relayed to RISP Lieutenant Kevin Hawkins, who was in charge of RISP's late patrol that night, that a black 2002 GMC Yukon, Massachusetts license plate 964ED5, possibly containing drugs or

4

weapons, would be passing through Rhode Island on I-95. Lieutenant Hawkins passed the information along to the local officers on night patrol, advising them to develop their own probable cause to stop the vehicle.

At around midnight, RISP Troopers Matthew McGuire and Daniel Gozzola observed the Yukon on I-95 changing lanes without using a signal and pulled over the vehicle. Trooper McGuire approached the driver, informed him of the traffic violation, and asked for identification and registration, which did not match the license plates. The driver (and sole occupant) was Madijan Kabba, defendant's brother, who stated he was on his way home to Massachusetts from a memorial service in New York. Trooper McGuire testified that he smelled burnt marijuana coming from the vehicle and that Madijan appeared nervous. Madijan admitted he had smoked marijuana recently but claimed that there was no marijuana or paraphernalia in the vehicle and said the officers could search it. When Trooper McGuire asked Madijan to step out of the Yukon, another trooper spied a burnt marijuana cigarette on the driver's side floor. The officers arrested Madijan and searched the vehicle, finding a brown paper shopping bag containing a large amount of currency in the back seat. Madijan claimed the money was $12,000 in proceeds from a Boston convenience store that he had forgotten to deposit, but there were no receipts.

Lieutenant Hawkins arrived on the scene shortly thereafter and, based on the information from Massachusetts police, called in a K-9 narcotics unit. The narcotics dog alerted to the passenger side rear bumper of the Yukon. Madijan and the Yukon where transported to the RISP barracks, where the officers conducted another exterior

canine search of the vehicle. The narcotics dog once again alerted to the right rear bumper. Noticing that the carpet on the passenger side cargo hold was glued down, Lieutenant Hawkins and Trooper McGuire discovered and pried open a hidden compartment. Inside was a black gym bag containing baggies of small blue pills, which were later tested and identified as oxycodone. The officers counted over 5,000 pills and over $15,000 in cash from the shopping bag.

## II. Discussion

Defendant moves to suppress any and all evidenced obtained as a result of the GPS monitoring of the GMC Yukon, particularly the money and pills seized during the October 4, 2010, vehicle search by RISP. He argues that the warrantless installation and use of the GPS tracking device violated his Fourth Amendment rights in light of the Supreme Court's recent decision in United States v. Jones, 132 S. Ct. 945 (2012). In Jones, a splintered Court held that attaching a GPS device to a vehicle and using it to monitor the vehicle's movements constitutes a "search" under the Fourth Amendment. While the Supreme Court did not address whether such a search required a warrant or some standard of suspicion, defendant contends that the lack of a warrant here requires application of the exclusionary rule.

The government counters that (1) the exclusionary rule does not apply because law enforcement agents were acting in good faith in accordance with then well-settled law that use of a GPS device was not a "search," see Davis v. United States, 131 S. Ct. 2419 (2011); (2) that probable cause was sufficient to justify use of the GPS device without a warrant under United States v. Moore, 562 F.2d 106 (1st Cir. 1977); and (3)

6

defendant lacks "standing" to challenge the GPS evidence.[3] The standing issue is dispositive here.

In order to contest the search, defendant must establish that he "personally has a reasonable expectation of privacy in the place searched." United States v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed" and therefore lacks standing to suppress evidence obtained from the search. Rakas, 439 U.S. at 134. Generally, a person does not possess a legitimate expectation of privacy in a vehicle in which he has no lawful ownership or possessory interest. Id. at 148-189 (petitioners who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized" did not have a legitimate expectation of privacy); Symonevich, 688 F.3d at 19-21 (same).

It is undisputed that defendant is not the owner of the GMC Yukon.[4] He contends, however, that since he was in possession of the Yukon at the time law

---

[3] The government also opposes defendant's request for an order compelling discovery as moot. It claims that law enforcement agents did not generate any reports regarding the installation or use of the GPS tracking device and that, since agents did not intend to make substantive use of GPS data as evidence in this case, no such data was preserved. At the hearing, Agent Krol confirmed that the data gathered from GPS monitoring of the Yukon was not preserved and was overwritten by subsequent GPS tracking. Agent Krol explained that it was not standard protocol to save GPS tracking data beyond the time the device was on the vehicle. The government also states that it has already produced all other documents (i.e., grand jury testimony of law enforcement agents and RISP reports regarding the October 4, 2010, search and seizure of the Yukon) in defendant's request.

[4] At the hearing, Trooper McGuire stated that after the search, he learned that the Yukon was registered to defendant. However, the parties have stipulated that the Yukon was not registered to defendant but to Westa International Development.

enforcement attached the GPS device, he has constitutional standing under Jones to contest the legality of the search. To be sure, a non-owner who lawfully possesses a vehicle may still assert some property rights as bailee. Jones, 132 S. Ct. at 949 n.2. Yet unlike the defendant in Jones, defendant did not establish that he was an "exclusive driver" of the Yukon and failed to submit any evidence demonstrating that he was operating the vehicle with the permission of its owner. See, e.g., United States v. Barraza-Maldonado, 879 F. Supp. 2d 1022, 1028 (D. Minn. 2012) (even if the GPS device was installed after non-owner defendant took possession of the vehicle, defendant could still not establish standing because there was no evidence that he was the exclusive driver of the vehicle or that he exercised exclusive control over it); United States v. Luna-Santillanas, No. 11-20492, 2012 WL 1019601, at *5 (E.D. Mich. Mar. 26, 2012) (vehicle was not registered to defendants, nor could they establish they were an "exclusive driver"; rejecting argument that, because defendants "sometimes used [the vehicle], they had a reasonable expectation of privacy in that vehicle at all times."); United States v. Figueroa-Cruz, No. CR 11-S-424-S, 2012 WL 6186088, at *9 (N.D. Ala. Dec. 11, 2012) (defendant "offered no proof of exclusivity, indicia of ownership, or even unqualified permission to use [the vehicle]."); United States v. Smith, No. 2:11-CR-00058-GMN, 2012 WL 4898652, at *3 (D. Nev. Oct. 15, 2012) (defendant did not own vehicle and "failed to submit evidence that he was operating the vehicle with permission of the vehicle's owner"). The government asserts, and defendant does not deny, that agents observed him using the vehicle only twice – during surveillance at his convenience store in late September 2010 and in a public parking lot at Star Market in

Cambridge on the day the GPS was attached. Indeed, the fact that defendant's brother was driving the Yukon on a long interstate trip at the time of the Rhode Island traffic stop strongly suggests that defendant was not the "exclusive driver" of the vehicle.

Even if the defendant could demonstrate a possessory interest at the time of the GPS installation, that does not win the day. The Eleventh Circuit recently confronted a set of facts analogous to those presented here. In <u>United States v. Gibson</u>, No. 10-15629, 2013 WL 538007 (11th Cir. Feb. 14, 2013), defendant James Gibson sought to suppress evidence obtained from the use of a tracking device placed on a vehicle registered to his brother. Suspecting Gibson of drug trafficking, agents installed a GPS device on the vehicle while it was parked in the driveway of Gibson's residence. Sometime later, agents used the tracking device to locate the vehicle when it exhibited a suspicious travel pattern and instructed local police to conduct a stop. An officer pulled over the vehicle for a traffic violation and identified the driver and sole occupant as Gibson's brother. After the officer smelled burnt marijuana emanating from the vehicle, Gibson's brother consented to a search of the vehicle, which unearthed two kilograms of cocaine.

The Eleventh Circuit found that Gibson, who paid for the vehicle's insurance and maintenance and often drove it, had demonstrated a legitimate expectation of privacy in the vehicle at the time the GPS device was installed on it in his driveway. Nonetheless, the court held that Gibson's interest applied only to the installation and use of the tracker while the vehicle was in his possession and not to the use of the tracker to locate the vehicle "when it was moving on public roads and he was neither the driver

9

nor the passenger." Id. at *19.  Because Gibson was not the legal owner, had not established exclusive custody and control, and was neither a driver of, nor a passenger in, the vehicle at the time that it was pulled over, he did not have standing to challenge the seizure and search of the vehicle and subsequent discovery of cocaine.  The only evidence Gibson could suppress was that which was gathered while the vehicle was in his possession and control – none of which turned out to be incriminating.

Defendant here faces a similar predicament.  Even assuming he has sufficiently demonstrated that he had a legitimate expectation of privacy in the Yukon when the GPS device was first attached (and he has not), defendant has not shown any such interest in the vehicle several days later when his brother was pulled over by RISP.[5]  Moreover, as in Gibson, it does not appear that there was tracking of any material consequence at the time defendant potentially had custody and control of the vehicle.  The record does not reflect that the GPS device was ever used to actually monitor defendant's movements, since defendant was not seen using the Yukon following the day of the installation and agents were not able to tell from the tracking data who was driving the vehicle.

On a final note, this ruling does not imply admissibility of the evidence resulting from the GPS monitoring of the Yukon.  I find only that such evidence need not be suppressed, not that it is admissible.  On the record currently before the court, it is unclear that the tracking data and anything found in the vehicle on October 4, 2010,

---

[5] Understandably, defendant has not claimed any possessory interest in the pills or currency seized from the Yukon.

can be attributed to defendant.  In order to introduce the evidence at trial, the government must still demonstrate admissibility, including relevance to defendant and his charges.

### III. Conclusion

Defendant has not established standing to challenge the installation and use of a GPS tracking device on the GMC Yukon, and his motion to suppress (Docket # 194) is DENIED. Defendant's request for an order compelling discovery is likewise DENIED as moot.

|  |  |
|---|---|
| March 4, 2013 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |